All right, thank you. This is case number 4-16-0672, People v. Anthony Gilmore. Mr. Jefferson, you may proceed. May it please the court, counsel. My name is Jerry Jefferson. I'm with the Office of the State of California Defender. I represent Anthony Gilmore. Today I'd like to focus my attention on Arguments 1 and 2. I'd be happy to answer any questions regarding Argument 4. Additionally, in light of our Supreme Court's opinion that People v. Barra will be withdrawing Argument 3. This is a case about the discovery of a handgun found in between the storm door and entry door of a vacant residence. At the time the handgun was discovered, the residence had been vacant for two weeks and there was no indication of when the doors had last been used. So the owner was there within three days of this incident, is that correct? Your Honor, the owner was at the residence within three days prior to the accident, but there was no testimony from the homeowner as to the last time he had used the doors. He indicated there was no gun present though, right? Your Honor, there's no testimony from the homeowner that he checked the doors or looked at the doors or used the doors. Is there any testimony with respect to whether or not there were any guns there at the time that the owner last appeared at the residence? Your Honor, the homeowner testified that he did not possess a gun at the residence and he had no reason to believe that a gun would be present. But there's a difference between not believing that a gun would be present and understanding that the house was vacant and he had to check the doors within those two weeks. Now shortly before the gun was found, Mr. Gilmore was driving a van that collided with the residence and came to rest near the door where the gun was found. The state's theory of trial was that Mr. Gilmore had placed the gun in between the doors. The close analysis of all the evidence shows that the state did not prove Mr. Gilmore possessed the firearm found at the residence beyond reasonable doubt. And again, the house was sat vacant for two weeks and given the testimony, there's enough of a two-week window in which anybody else could have placed the gun between those doors. In addition, the state offered no forensic evidence. There's no DNA or fingerprint evidence that connects Mr. Gilmore to the firearm. There's no eyewitness testimony. Nobody saw Mr. Gilmore possess the firearm. Nobody saw Mr. Gilmore attempt to discard the firearm at the residence. So Council, we have the photograph and I just want to make sure I'm identifying these correctly. People's Exhibits 6C and 6D. 6C shows a minivan that struck the residence at rest there just outside the front entry of the home. And then 6D is the storm door and it shows the firearm resting at the bottom, leaning up against the front door. So that's what the jury, those were shown to the jury, correct? Correct. This is after testimony establishing that a defendant let the police officer on a high-speed chase. And this was after he had cut through a parking lot to avoid a red light, reaching speeds of 70 miles an hour within the city limits, is that right? That's correct. And crashes into the house and then the driver's side door is immediately next to the storm door and you can see that glass panel of the storm door pushed in, right? Correct. And then there is a period of time where the officer is commanding the defendant to get out of the vehicle and I think the briefs indicate that is a 40-second period before he actually is seen.  42 seconds. So the gun is then found just inside of that storm door, is that right? That's correct. No direct evidence that the defendant placed it, but you'd have to agree that there's certainly pretty persuasive circumstantial evidence that he dropped that gun in there, don't you think? Your Honor, in this case the circumstantial evidence doesn't prove the element of possession beyond a reasonable doubt. Nobody saw Mr. Gilmore get out of the van. We don't know when Mr. Gilmore got out of the van. He hit the residence at still a relatively high rate of speed. It's undisputed that he hit his head. It's undisputed that the door was damaged and he had to struggle to get out of the van. Was there an alternative theory as to how that gun got there advanced at trial? The implication is that somebody else put the gun there. And even so, the state's circumstantial evidence doesn't prove that Mr. Gilmore put the gun there. There's this narrow window of time in which he would have had to get out of the van and then place the gun there. But again, no one saw him get out of the van. No one saw him standing at the door. No one saw the door move. And so with the top of the door cracked open, it's to be believed that he put the gun in the door through that window. Certainly in the video, you would see his hand above the van. The top of the door is clearly visible in the video from Officer Shabestek's squad car. Additionally, the placement of the handgun is just inconsistent with that limited amount of time. It's barrel side down, perfectly up. Well, starting with the storm door closed and the front door closed, there would just be a gap between the two of what? Was there testimony as to just how narrow that gap would be between the two? There was no testimony about the narrowness of the gap. Just looking at it, it doesn't look to be that it would be more than a couple of inches wide. Viewing it in that way, if a gun were to be dropped, I don't see how it would flop over and how this would be an implausible resting position if it were to have been dropped through that open lower glass panel. Again, given the limited amount of time, it's highly improbable that Mr. Gilmore would have been able to reach in, carefully, neatly place the handgun, and still appear in front of the van in 42 seconds. So you're saying it couldn't have been dropped and have landed in this position? If it had been dropped, I believe physics tells us that things bounce. And while it's not impossible, it's highly improbable that the gun would land in that position. It would land perfectly upward, barrel side down. It would be more probable that the gun would have been tilted toward one door or the other. And so, given the lack of forensic evidence, given this limited amount of time, given the fact that nobody saw Mr. Gilmore with a handgun, saw the door move, and the inconsistent placement of the handgun, it's highly improbable that Mr. Gilmore placed the gun in between the doors. And as such, no rational trier of fact could have found that Mr. Gilmore had possession of the handgun. What about the clip in the ammunition? What about that issue? The clip in the ammunition, we raise that as a plain error. And even if this court finds that the evidence was somehow barely sufficient to find that Mr. Gilmore had possession of the handgun, the evidence is at least closely balanced for purposes of a first pronged plain error analysis for the reasons that I just discussed. And the test for determining whether evidence is close is a possibility. It's entirely plausible that somebody else placed the handgun between those two doors in the two weeks leading up to the accident. It's entirely plausible that Mr. Gilmore fled out of fear that if he were pulled over by officers of the best, that he would be sent back to jail for driving under license. And so the evidence in this case is at least close to the evidence. How about the fact that defense counsel stipulated to the clip in the ammunition and then argued that there were no fingerprints on those items? Your Honor, defense counsel did stipulate to the lack of fingerprint evidence or DNA evidence on the clip or ammunition. Well, how do you get to use that and then complain about it? The testimony surrounding the clip and ammunition was well outside the scope of the stipulation. And if I may, that's what makes the error prejudicial. That's what makes introduction of these items prejudicial. It's that the testimony is offered for no other reason than to suggest that Mr. Gilmore was armed and dangerous at the time of the accident. And the State elicits testimony regarding the clip and ammunition on three different occasions. In order of significance, first, after already establishing that the gun was loaded, the State asked how the gun, how a round of ammunition could be discharged if the gun was loaded. There's just no context or justification for that inquiry. How did that prejudice defendant, someone testifying about how a gun is fired? Your Honor, in this case where the evidence is so close, testifying about how the gun was loaded and then would expel a round of ammunition is prejudicial because it's offered for no other reason than to show that Mr. Gilmore is a bad person. He deserves punishment. It's a conviction based on fear, not on sufficient evidence. There's a fear that Mr. Gilmore is driving with a loaded handgun. And so the second time they offered testimony, it was a narrative of how Officer Sevestic secured the handgun and unloaded the handgun. And again, there's no context for whether or not the gun was loaded and how that gun would be unloaded. The charges against Mr. Gilmore require proof of possession of a firearm, not proof of possession of a loaded firearm. But as Justice Connacht indicated, defense counsel stipulated to the fact that it was a loaded firearm. It was a clip with ammunition. In fact, did the stipulation itself indicate that the clip was for that gun? It's my understanding that the stipulation did not indicate that the clip was for that gun. But again, the testimony surrounding these items is just not within the scope of the stipulation. There's certainly a line of questioning that would be within the scope of the stipulation. If counsel had asked, for instance, is it possible to have loaded the handgun or touched these items without leaving a fingerprint of DNA evidence, certainly that goes to the question of possession. But here, how a firearm is discharged is not relevant. It's not helpful to the trier of fact to determine the issue of possession. It doesn't tell the jury whether or not Mr. Gilmore had possession of the firearm. And so in this case, we have clear error. We have admission of the clip and ammunition and the testimony describing these items. That's clear error. We also have closely balanced evidence and that it's entirely plausible that somebody else placed a gun in between the doors. And under Peeble v. Seve, we believe that's sufficient for this Court to grant Mr. Gilmore a trial. But we also understand that in Peeble v. Eli, this Court read Seve to require that he also show prejudice, that the error is of such a nature that it would have tipped the scales against Mr. Gilmore. And as I said, the testimony is clearly prejudicial. And the evidence is so close that there's just no room for error in this case. It certainly did tip the scales against Mr. Gilmore. And therefore, Mr. Gilmore has carried his burden of proving first-pronged, plain error in this case. And we would ask that this Court demand for a new trial. If there are no further questions, we respectfully ask that this Court vacate Mr. Gilmore's convictions outright or any alternative remand for a new trial. I have just a clarifying question. I want to make sure you're withdrawing your argument in regards to the DNA analysis fee. Is that right? Yes, in light of our Supreme Court's opinion in Peeble v. Seve. Okay, thank you. Response? May it please the Court. Good morning. My name is Amelia Burgess, and I'm appearing today on behalf of the people of the State of Illinois. As defendant focused on the first two of his arguments in his brief, I will do the same today. And I would note that even though the analysis under both of these items are different, the overriding theme today, like it often is in these proceedings, is one of fairness. Did the defendant have a fair trial? And as a result, was the outcome of that trial just under the laws of the State of Illinois? And the reason I bring that up is because it's important to note there is a difference between a fair trial and a perfect trial. While perfection may be a worthy goal, it is not one that the law requires. The question is whether or not the defendant obtained a fair trial. And under the first argument for the defendant, he questions the sufficiency of the evidence. Again, I think it's important to focus on the parameters of this analysis. And the question is not whether or not the defendant can stand here today and make an arguably credible argument that there was some alternative explanation for how this handgun came to be between this green door and the entry door of the home where he crashed his car or his vehicle into the house. So the question is not whether he can make a credible argument that there is another explanation. The question is whether or not that the evidence was sufficient in viewing the evidence in the light most favorable to the state and the prosecution in this case, or whether or not the argument that he was indeed guilty of the crime charged was improbable, unreasonable, or unsatisfactory. And in this particular instance, that is not the case. Here there is a very clear line of rational, logical thought that starts with the defendant cutting through a parking lot, then leading a police officer in the city of Champaign on a high-speed chase, where he then crashes into a home. There is a period of time where it is impossible to know exactly what the defendant is doing, where he is hidden from view. After the vehicle crashes, he then runs from the police as apprehended. And during the cleanup of the scene, the emergency responders, I believe it was the fire department, found that there was a handgun in this space between the entry door of the home and this green door. Counsel, what is the state's position with respect to the length of time between the defendant crashing into the residence and the police arriving and capturing on video what happened after that? Thank you, Your Honor. The exact amount of time that we have on video is roughly 42 seconds, from when we can see the officer's video showing the defendant and from when he emerges from behind the vehicle. However, as the state pointed out in its brief, the defendant crashed his vehicle into the home at some point in time prior to the police officer arriving. So what we can say is there were at least 42 seconds that the defendant had to do whatever it is he did with the gun, which based on the circumstantial evidence, he dropped it between the two doors. So we don't know how long it was that the defendant was there alone, before he crashed into the residence before the officer arrived. There is no testimony or evidence related to that? There is not, Your Honor. That is correct. However, even if all we had to work with was 42 seconds, that is more than enough time to accomplish what it is the defendant was found guilty of having done, which is exiting the vehicle, dropping a handgun between the two doors, and then running from behind the vehicle. Forty-two seconds, while it may not sound like a substantial amount of time, is more than sufficient to do those particular acts, which take mere seconds to perform. Now, the defendant has argued on appeal that the positioning of the gun would be inconsistent with the state's theory, and that in some way would make this an improbable or unreasonable or unsatisfactory result. However, as the state has noted, common sense would tell us that the gun's position was actually exactly how one would expect to find a gun that had been dropped between the two doors. Whether or not it was between the pane of glass that had become dislodged, and which the officer who was on the scene testified was open, making that space accessible, or whether or not the defendant attempted to avail himself of the gap that was created when his vehicle hit the two doors. And when the officer had the video from his squad car on the defendant, should it have captured the defendant putting the gun between, you know, in the door? No, Your Honor, it should not. From viewing the video, the defendant is outside of the view of that camera for quite some time. In fact, the majority of those 42 seconds, it is difficult to see the defendant at all, let alone whether or not he is moving. Quite simply, he was on the other side of the vehicle. So the fact that the video did not capture anything certainly does not help us in terms of being able to definitively say exactly what happened. So the Boston Council mentioned that you can see the top of the door, I guess, the opening where it would have been inserted. What's your response to that? Correct, Your Honor, you can see the top of the door, but the response to that is simply that's not where the defendant placed the gun. There were other opportunities and other areas for him to drop the weapon in, most specifically that glass panel that was open, and that would have been well below the height of the vehicle. And People's Exhibit 6C, which is the photograph showing that panel, was there testimony that that was the state of the door at the time of the collision? Yes, Your Honor, that is correct. Also, one thing that is noteworthy in particular relevance to this section of the defendant's argument is the fact that the defendant himself chose to testify. As a result, credibility is at issue here. The defendant testified to the jury that the weapon was not his, that he did not have a weapon, and that he did not place it between the two doors. The jury clearly, from the outcome of the trial, found this not to be credible. This is particularly worth bringing up at this point in time, because questions of credibility are difficult to assess here. This Court is not able to see the defendant's testimony, and great deference must be given to the jury in terms of its analysis of the credibility of the defendant. The fact that the defendant in this case was found to be not credible equally goes in favor of a finding that the sufficiency of the evidence has been met here, and that the outcome was not improbable, unsatisfactory, or unreasonable based on the evidence. Now, we have this window of approximately three days prior to this incident where the homeowner was there, and you heard me ask opposing counsel about the owner's testimony as far as whether or not there was a gun there. Why don't you tell us about that testimony? What did that consist of? Thank you, Your Honor. My reading of the record is the testimony was somewhat strong within defense counsel as stated today, and that the owner of the home did affirmatively state that he had been there three days prior and that he had never seen a weapon between the two doors. And this is particularly interesting when contrasted with one of the cases that the State referred to in its brief, the People v. McCarter case, where they were similar, although not same circumstances, and there the Court found even an expiration of four days between when the gun was found in a location and when a weapon or other contraband was found was not determinative on the question of whether or not it was credible for the defendant to then argue that some other person at some point in time that could not be identified had placed those items there, and that the sufficiency of the evidence had been met under those circumstances. As a result, under Argument 1, it is the State's position that the sufficiency of the evidence under the standards set forth by LMI case law has been met, and the defendant's outcome and the verdict here was fair. Is it also correct that the homeowner actually entered through that door when he was examining the property? Your Honor, I do not recall the testimony being that explicit. However, I do believe that that was the inference made by the homeowner's testimony. I cannot point to a single point in time where he said, I actually entered through that door. However, I think if you read his testimony in totality, that is the clear inference that can be drawn from that testimony. With regard to the plain error and the evidentiary questions, here again it's important to start by focusing on what the inquiry is. Because again, the question is not whether or not this was a perfect trial free of any potential error, but whether or not it was a fair trial, and whether or not at the plain error stage there was some error or admission of evidence that should not have been done, that calls into question the validity of the outcome. And both parties have cited People v. Sebi being a very recent case from the LMI Supreme Court and a very useful one when it comes to this analysis. And even in People v. Sebi, the Court notes that insubstantial errors are not what the plain error  It is not a question of insubstantial errors, but whether those errors that are clear. And in this regard, this is a very high burden for the defendant to now meet. Because the error alleged here is one that is discretionary for the trial court. The question of what evidence is admitted at trial is subject to an abuse of discretion standard, or at least it would be if this were not subject to plain error. So it's important to keep that in mind. The question is whether or not the trial court's admission of this evidence was arbitrary, fanciful, or unreasonable. If it is not, then this Court cannot find that there was clear error under the plain error doctrine. And as has been discussed in the state's brief, that is an insurmountable burden for the defendant because the defendant actually used this evidence at trial. It actually benefited his particular version of events. And we know that that argument was unsuccessful at trial. The jury did not find it persuasive. But nonetheless, it was not error for the trial court to allow that evidence in where the defendant himself sought to put it in and to use it as an attempt to undermine the state's case. And there, of course, it is simply that the state had not been able to prove the actual possession of the weapon through any laboratory test. There was no DNA available and there were no fingerprints. Now, obviously, that doesn't undermine the fact that the circumstantial evidence can still yet nonetheless prove that the defendant was in possession of the weapon as needed to support his conviction. However, under those circumstances, it would now be slightly unusual for the defendant to be able to prove that he was in possession of the weapon. And again here, the question is not whether or not there are competing, arguably credible theories. But under the plain error review, especially under prong one, which is what the defendant has pursued in this case, the question is whether or not the evidence was so closely balanced that the error, not an error, but the error, risks tipping the scales against the defendant in a way that would call into question the propriety of the outcome. And again here, where the question is whether or not certain evidence should or should not have been admitted and where we are operating under the paradigm of an abuse of discretion, it would be first, the state first argues it was not clear error. And second would argue that under the plain error doctrine and the question of closely balanced evidence, the evidence was not closely balanced for the I would like to address just briefly Defendant's Argument 4. It's my understanding the defendant has now withdrawn Argument 3, but I would like to address Argument 4 just briefly because in the reply brief, the defendant does assert the position that regardless of people v. VARA, this court still has the jurisdiction and the authority to evaluate whether or not the sentence credit was properly applied. I apologize, not sentence credit, the fine credits at the trial. And I would simply point out that even under people v. VARA, the evidence that the defendant has presented in support of that argument under people v. VARA is not a part of the appellate record. So at this point in time, it would be inappropriate for this court to review it, even given counsel's argument that trial counsel was in some way deficient in how the order was postured by the trial court. It is simply impossible for this court at this point in time to address that question under the new paradigm of people v. VARA. And as a result, like Argument 3, it must be handled through separate means at the trial court level. I'll point out there is a recent Illinois Supreme Court decision that addresses it not correctly because it didn't involve per diem credit, but it did discuss per diem credit, and that's people v. Young, where it found that it had jurisdiction, that the court of review has jurisdiction to address the issue. So just for counsel's sake, people v. Young on this issue might be instructed. Thank you, Your Honor, and I appreciate that. I would be curious if people v. Young, whether or not they address specifically the question of the circuit clerk documents and whether or not they can be appropriately part of the record. And if there's some method for the court to take judicial notice, considering people v. VARA. And certainly if this court would appreciate additional briefing from the parties, I would be more than willing to do so if the court had any remaining questions about the state's position given that case law. However, overall, this state's position is that this outcome was fair and it does meet the criteria in order for this verdict to be upheld by the appellate court. And so if there are no further questions, the state would simply ask that this court affirm the judgment and verdict and sentence of the trial court. Thank you. Thank you.  Thank you, Your Honor. The fact that Mr. Gilmour is hidden from view during those 42 seconds is exactly the point. I would again reiterate that there's no evidence showing when Mr. Gilmour got out of the van. There's no dome light. You can't see him open the door. We just don't know. The state didn't pinpoint when he got out of the van. So we don't know how long he stood behind the van. Or the state can't describe his actions. With any certainty. We don't see Mr. Gilmour behind the van. We don't see him at the door. We don't see him touch or manipulate the door. There's no evidence offered to suggest that he touched or manipulated the door or the window. And so those things all add up to reasonable doubt  In addition, the state points to People v. McCarter. And that case is not applicable here because that's a constructive possession case. To prove constructive possession, the state has to prove knowledge and control of the area. And here, that wasn't the state's argument at trial. The state's argument at trial was that Mr. Gilmour actually possessed the firearm. He actually placed the firearm in between the doors. Here, Mr. Gilmour denied any knowledge of a handgun. Repeatedly denied any knowledge of a handgun. And to say that he had control of the area in the limited amount of time that he was behind the van is unreasonable. Additionally, certainly plain error is supposed to address substantial errors. But in this case, testimony about how a gun would expel a round of ammunition if it were discharged, if it were loaded, certainly tip the scales in a case about possession of a handgun. The evidence is so close, again, there's just no room for error. There's no room for a jury to hear about how Mr. Gilmour was armed and dangerous when he allegedly possessed this handgun. And finally, in regards to argument four, my argument was that that's the point. It's not part of the record. The judge did not specify how Mr. Gilmour's per diem credit was to be allotted among his credit-eligible funds. The sentencing order is incomplete. The judge did order it, though, right? Yes. The judge ordered the correct amount of per diem credit. But he did not specify in his sentencing order how that credit was to be applied to the eligible funds. And what would that look like? I mean, having been on the trial court for many years, you show basically the amount of credit. You take the number of days, multiply it by five, and then you direct the clerk to give that credit. Normally, on the record, the trial court isn't saying this amount is to go to a certain fine or fee or anything like that. So I'm not quite sure what you mean by that. Certainly. It's that the circuit court should specify in its sentencing order that not only did Mr. Gilmour receive this amount of credit, then perhaps a list of the fines that are eligible to receive that credit, rather than simply listing the fines and leaving it to the clerk to resort to supplemental materials to decide which fines are eligible for credit and which fines are not. So the $95 that you identify in your brief as an amount that the per diem credit should apply towards, the $95 was those constituted fines that were properly assessed by the judge? Correct. And was the $95 included in that total amount of the per diem credit? Was it $1,200? $1,120. Okay. Was the $95 included in that amount? Your Honor, I understand your question. It's whether or not the $95 worth of fines appeared on the sentencing order, on the fines sheet signed by the court? I'm wondering, can you just lay out what is it that you're requesting in terms of the $95? Are you saying that that wasn't included in the $1,120 identified by the court as fines, creditable fines? Are you saying that that was a later add-on by the clerk and that the $95 should, that this court should direct the trial court to apply an additional $95 credit? Let me ask the question that kind of goes along with that. Was the $1,100 and some dollars ever applied to the defendant's balance? I mean, it was not, is that right? Not according to the court's order, Your Honor, if I may answer your question. $95 was ordered by the court. We are asking this court to remand to the circuit court for application of part of that $1,120 to offset those $95 worth of creditable fines. The record indicates that that did not occur? The record indicates that that did not occur. Okay. It's not part of the sentencing order. You are out of time. If there are no further questions, I would thank the court. All right. Thank you. Thank you both. The case will be taken under advisement and a written decision shall be issued.